UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
In re:

CONTEMPORARY MANAGEMENT                    Lead Case No. 23-22459 (SHL)
SERVICES LLC, ET Al.,[1]                    (Jointly Administered)


                          Debtors.
------------------------------------------------------------------------X

### FINAL ORDER AUTHORIZING USE OF CASH
### COLLATERAL BY DEBTORS PURSUANT TO 11 U.S.C. SECTION 363

UPON the motion dated June 20, 2023 (the "Motion") of the above-captioned debtors and

debtors-in-possession (the "Debtors") seeking authority to, *inter alia*, use cash collateral in which

the United States Small Business Administration (the "SBA" and any other secured creditors who

have asserted an interest in cash collateral, the "Secured Creditors") may assert a security interest

pursuant to Sections 363(c)(2) and 361 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et

seq*. (the "Bankruptcy Code") and Federal Rules of Bankruptcy Procedure 4001; and an interim

hearing having been held on June 26, 2023 (the "Interim Hearing"); and a final hearing having

been held on August 3, 2023 (the "Final Hearing"), and no objections to the Motion having been

filed, and upon the record taken at the Final Hearing including the stated consent of the Secured

Creditors to the granting of the relief in the Motion on a final basis, subject to the terms of this

Final Order, and all of the pleadings heretofore filed in this proceeding, it is hereby found and

determined as follows:

A.      On June 15, 2023 (the "Petition Date") each of the Debtors filed a voluntary petition

for relief under Subchapter V of Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") and

---

[1] Jointly administered with Dale D. Goldschlag D.D.S. P.C., d/b/a Contemporary Dental Implant Centre® (**-***6832), CDIC Holdings, LLC (**-***8684), Refined Dental Laboratory, LLC (**-***7644), and Total Dental Implant Solutions, LLC (**-***8229).

have continued in possession of their property and the management of their business pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

B.      As of the date hereof, the Bankruptcy Court has not authorized the appointment of an Official Creditors' Committee as provided for in Section 1102 of the Bankruptcy Code. No examiner has been heretofore appointed in this proceeding.

C.      Prior to the Petition Date, in or around May or June 2020 and in response to the Covid-19 Pandemic, the Debtors  entered into various EIDL loans with the SBA (the "Note"), whereby the SBA issued three loans with the principal sum of approximately $150,000 each to Contemporary Management Services LLC ("CMS"), Dale D. Goldschlag, D.D.S., P.C. ("DDG PC"), and Total Dental Implant Solutions LLC ("Total Dental") which obligation was secured pursuant to, inter alia, various security agreements executed sometime in or around May or June 2020 as well (collectively, the "Security Agreements").  The Debtors acknowledge on behalf of themselves that pursuant to the Loan Documents, the SBA holds a first priority perfected security interest in the Collateral to secure the Debtors' indebtedness to it.

D.      The Debtors acknowledge on behalf of themselves and not on behalf of any creditors or other parties in interest that the SBA duly perfected its lien in the Debtors' assets by filing UCC-1 financing statements evidencing its lien  (the "SBA Pre-Petition Liens" and together with and any other of the Secured Creditors' pre-petition liens, the "Pre-Petition Liens").

E.       The Debtors acknowledge on behalf of themselves and not on behalf of any creditors or other parties in interest that on November 9, 2022, DDG PC entered into a financing and security agreement with Celtic Bank Corporation ("Celtic").

F.      The Debtors acknowledge on behalf of themselves and not on behalf of any creditors or other parties in interest that on December 29, 2022, DDG PC entered into a Forward

Purchase Agreement (Fixed ACH Delivery) with Kapitus LLC ("Kapitus"), which asserts that it purchased DDG PC's receivables and filed a UCC-1 on January 3, 2023 under the name "CT Corporation System, as representative".

G.    The Debtors acknowledge on behalf of themselves and not on behalf of any creditors or other parties in interest that sometime thereafter the Debtors' agreement with the SBA, various multiple merchant cash advance lenders (the "Other Secured Parties") who the Debtors made further agreements with, filed their own UCC-1 financing statements on certain of the Debtors. However, the Debtors do not believe the liens of the merchant cash advance lenders are valid and/or perfected and/or constitute an interest in cash collateral.

H.    The term "Cash Collateral" shall mean and include all "cash collateral," as that term is defined by 11 U.S.C. § 363, in or on which the Secured Creditors have liens that attach and/or a security interest.

I.    The Debtors' use of Cash Collateral is essential to the continued preservation and maximization of the Debtors' estate.

J.    The SBA, Celtic, Kapitus and the Other Secured Parties (all, collectively, the "Secured Creditors") are entitled to receive adequate protection within the meaning of, and pursuant to 11 U.S.C. § 363(e), for any decrease in the value of the Secured Creditor's interest since the Petition Date in the Cash Collateral as set forth in this Order.

K.    Continued use of the Cash Collateral on a final basis, is necessary to prevent immediate and irreparable harm to the Debtors' estate in that without authorization to use the Cash Collateral, the Debtors' ability to sustain their operations and meet their current, necessary, and integral business obligations will be impossible.

L.    The value of Debtors' estates will be maximized by the continuation of the Debtors

as a going business, and the use of the Cash Collateral is essential to such operation.

**BASED UPON THE FOREGOING,** it is hereby ORDERED as follows:

1. The Motion is GRANTED on a final basis. Effective immediately, the Debtors are authorized to use the Cash Collateral on a final basis subject to the terms of this Order and in accordance with the budget annexed hereto as **Exhibit A,** subject to a 10% variance or further order of this Court.

2. This Court has jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. This is a "core" proceeding pursuant to 28 U.S.C. § 157. Venue is proper in this Court pursuant to 28 U.S.C. § 1408. Notice of the relief sought herein was adequate and appropriate in the current circumstances of this Chapter 11 case as contemplated by 11 U.S.C. § 102(1)(A) and Federal Rule of Bankruptcy Procedure 4001(b)(2).

3. In addition to the existing rights and interests of the Secured Creditors in the Cash Collateral and for the purpose of adequately protecting them from Collateral Diminution,[2] the Secured Creditors are hereby granted valid, enforceable, fully-perfected, security interests (the "Replacement Liens"), to the extent that said Pre-Petition Liens were valid, perfected and enforceable as of the Petition Date and in the continuing order of priority that existed as of the Petition Date, to the extent of, and as security for any decrease in the value of the Secured Creditors' interest in the Cash Collateral since the Petition Date in, to and upon all existing and hereafter-acquired property of the Debtors of any kind or nature including, but not limited to, Debtors' real, personal, tangible and intangible property, as well as any and all proceeds, products, offspring, rents and profits thereof, in the same validity, order and priority as the Pre-Petition

---

[2]    For purposes of this Order, "Collateral Diminution" shall mean any diminution in value of the Secured Creditors' interests in Debtors' property as of the Petition Date by reason of Debtors' use of Cash Collateral in accordance with this Order.

Liens, subject, in accordance with the priority as set forth herein, and subordinate only to: (i) United States Trustee fees pursuant to 28 U.S.C. Section 1930, together with interest, if any, pursuant to 31 U.S.C. Section 3717 and any Clerk's filing fees; (ii) the fees and commissions of a hypothetical Chapter 7 trustee in an amount not to exceed $10,000 (the "Carve-Out"). In addition, the Replacement Liens granted hereby shall not attach to the proceeds of any recoveries of estate causes of action under Sections 542 through 553 of the Bankruptcy Code.

4.      Furthermore, Debtors CMS, Total Dental, and DDG PC will continue to make their monthly payments of $731.00 on the relevant due dates under their respective EIDL loans with the SBA. The payments authorized by this Final Order shall be applied by the United States of America (the "Government") in its discretion to the amounts owed by Debtors to the SBA.

5.      All of the Debtors' expenditures shall be specifically accounted for in detailed monthly operating reports which the Debtors shall file with the Bankruptcy Court.

6.      The Debtors will provide a line item in the Budget for Subchapter V Trustee fees of $2,000 per month until the month that the plan is filed and $2,000 per month during the pendency of the case. The Debtors are required, on a monthly basis, to set aside the monthly budget amount in Debtors' counsel's trust account. The distribution of the proceeds of those funds will be subject to further order of the court and binding on all parties. The Secured Creditors, the Debtors and the Subchapter V Trustee are reserving all of their rights hereunder.

7.      The security interests and liens herein granted and regranted, including the Replacement Liens: (i) are and shall be in addition to, and not in substitution of, all security interests, liens, encumbrances, and rights of set-off existing in favor of the Secured Creditors on the Petition Date, or other rights of theirs currently existing or hereinafter arising; (ii) shall secure, in whole or in part, the payment of indebtedness to the Secured Creditors; and (iii) shall be deemed

to be perfected without the necessity of any further action by the Secured Creditors or the Debtors.

Without limitation, therefore, the Secured Creditors shall not be required to file financing

statements or other documents in any jurisdiction or take any other action to validate or perfect the

liens and security interests granted by this Order. This Order shall be sufficient and conclusive

evidence of the validity of the Replacement Liens.

8.     The Secured Creditors shall have the right to assert a superpriority claim pursuant

to 11 U.S.C. § 507(b) and/or seek adequate protection, and the Debtors shall have the right to their

defenses to such claims.

9.     The Debtors shall maintain all necessary insurances, including, without limitation,

liability and workmen's compensation as may be required, and obtain such additional insurances

in an amount as is appropriate for the businesses in which the Debtors are engaged.

10.     The right of Debtors to use the Cash Collateral shall terminate immediately upon the

occurrence of any of the following events:

a)     the entry of an order of the Court converting or dismissing the Chapter 11

cases;

b)     the entry of an order of the Court confirming a plan of reorganization in

the Chapter 11 cases;

c)     the failure of the Debtors (i) to perform any of their obligations under this

Order (a "Default"), and (ii) to cure such Default within ten (10) business

days after the giving of written notice thereof to the Debtors, the Secured

Creditors, the United States Trustee and any official committee appointed

in the Chapter 11 Cases by the United States Trustee (the "Cure Period");

d)      the amendment, supplementation, waiver or other modification of all or part of this Order without the Secured Creditors having been given at least seventy-two (72) hours advance, written notice, by overnight service upon them (unless otherwise prescribed by the Bankruptcy Court having jurisdiction over Debtors' cases).  However, in no event shall the Debtors seek emergency relief concerning this Order from the Court without the Secured Creditors having been given at least one business day's advance, actual notice (via telephone or electronic mail); or

e)      the termination of all or substantially all of the operations of the Debtors, whether by voluntary act(s) or omission(s) of the Debtors, or otherwise.

11.     Nothing contained in this Order shall be construed to create rights of third parties for or against the Secured Creditors not otherwise provided by law.

12.     The Secured Creditors may in their discretion, file a certified copy of this Order in any jurisdiction in which the Debtors have or come to have real or personal property, and in such event, the subject filing/recording officer is hereby authorized and directed to file/record such certified copy.

13.     The Debtor shall promptly provide to the Government any and all financial information reasonably requested by the Government and shall permit the Government, upon prior reasonable notice, to review its books and records with respect to the subject matter of this Order, and make copies thereof during normal business hours.

14.     The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court with the consent of the Secured Creditors, and the Debtors.

15.     If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this Court or any other court, such stay, modification or vacatur shall not affect the validity and enforceability of any lien, priority or benefit with respect to any indebtedness of the Debtors to the Secured Creditors.

16.     The findings contained in this Order are binding upon the Debtors and all parties in interest (including but not limited to any statutory committee subsequently appointed in the Chapter 11 cases).

17.     This Order shall be binding upon any subsequently appointed or elected trustee in a successor case under Chapter 7 of the Code.

18.     Notwithstanding anything to the contrary herein, this Order is without prejudice to the rights of any creditor or party in interest in the Chapter 11 cases, to challenge the type, nature, validity, perfection, priority, extent, enforceability or amount of the Secured Creditors' prepetition claims or the Replacement Liens in the Collateral (a "Challenge"). Any Challenge must be made on or before the earlier to occur of (a) 60 days after entry of this Order, or (b) the effective date under any Chapter 11 plan filed by the Debtors in the Bankruptcy Cases or such later date as may be agreed upon by the Secured Creditors (the "Challenge Period"), after which time any such Challenges shall be deemed finally and conclusively barred; provided, further, if one or more claims are timely made under this paragraph and properly filed in this Court in the Bankruptcy Case, then except for such timely and properly filed claim(s), all other potential claims and causes of action of any kind or nature against the Secured Creditors are hereby deemed forever waived and relinquished.  For the avoidance of doubt, during the Challenge Period, creditors are hereby granted standing to challenge the Secured Creditors' liens and claims and to file any other potential claims and causes of action of any kind or nature against the Secured Creditors, and no further

request for standing is or shall be required.

19.    The Bankruptcy Court shall retain jurisdiction with respect to all matters pertaining to this Order.

20.    Except as otherwise provided herein, or by Order of the Court, all demands, notices, requests, consents, reports, or other communications provided for hereunder shall be made in writing, and shall be deemed to have been given either upon (i) personal delivery, by courier or messenger service, and acknowledgment, by any officer (or authorized recipient of deliveries to the office) of the party to whom given, as of the date and time so acknowledged, or (ii) due deposit into the United States mail, by first class mail.  In all cases, such demands, notices, requests, consents, reports, or other communications shall be dispatched to the following addresses (or such other addresses as may be furnished hereafter, by written notice given in accordance with the terms of this paragraph):

In the case of the SBA:

> U.S. Small Business Administration
> National Disaster Loan Resolution Center
> 200 West Santa Ana Boulevard
> Santa Ana, CA 92701
> Attn: Attorney Advisor Jeffrey Schervone
> Tel: (212) 264-1482
> Email: Jeffrey.Schervone@sba.gov
>
> -and-
>
> United States Attorney's Office, Civil Division
> 86 Chambers Street, 3rd Floor
> New York, NY 10007
> Attn: Mark Osmond, Esq.
> Tel: (212) 637-2713
> Email mark.osmond@usdoj.gov

In the case of Debtors:

> Jonathan S. Pasternak, Esq.
> Robert L. Rattet, Esq.
> Davidoff Hutcher & Citron LLP
> 120 Bloomingdale Road, Suite 100
> White Plains, NY 10605
> Phone: (914) 381-7400
> Fax: (914) 381-7406
> Email: jsp@dhclegal.com
>         rlr@dhclegal.com

21.     Unless otherwise stated, all payments that the SBA is entitled to receive, or that the Debtors are required to provide to the SBA pursuant to this Order, shall be made through www.pay.gov or MySBA Loan Portal or directed to the following address:

> U.S. Small Business Administration
> Denver Finance Center
> 721 19th Street
> Denver, CO 80202

22.     <u>Rights Preserved</u>. Notwithstanding all terms to the contrary stated herein, this Stipulation expressly reserves, and shall not be construed in any way as a waiver or relinquishment of, any rights or remedies, expressly or implicitly, that Secured Creditors may have at law and in equity, including but not limited to:  (i) under their agreements and related documents with the Debtors;   (ii) Secured Creditors' right to seek any other or supplemental relief in respect of the Debtors, including the right to seek additional adequate protection or restriction on Cash Collateral (without prejudice to any other person's right to object to or otherwise oppose such additional adequate protection or restriction on Cash Collateral); (iii) Secured Creditors' right to object to impermissible use of Cash Collateral; (iv) Secured Creditors' agreement, consent, or acquiescence to the terms of any plan by virtue of any term or provision of this order; (v) Secured Creditors'

right to assert any other rights, remedies, or defenses available to Secured Creditors to respond to any motion, application, proposal, or other action, all such rights, remedies, defenses, and opportunities to respond being specifically reserved by Secured Creditors; (vi) the rights of all parties with respect to the Debtors' alleged sale of its receivables; (vii) Secured Creditors' agreement, consent, or acquiescence to the terms of any plan of reorganization or treatment of its claim by virtue of any term or provision of this order; (viii) any of the rights or remedies of Secured Creditors under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, (a) the right to request modification of the automatic stay of Bankruptcy Code § 362, (b) the right to request dismissal or conversion of this chapter 11 case; (c) all rights and remedies under the Uniform Commercial Code; and (d) all rights and remedies under the Federal Arbitration Act, 9 U.S.C. §1 *et seq.* and any other applicable law.  Nothing herein shall be construed to impair Secured Creditors' rights to seek the payment of default interest and the payment of their attorney's fees and expenses from the Debtors.  Nothing herein contained shall prejudice the right of Secured Creditors to seek modification, extension, or termination of this order.

23.    Notwithstanding any terms to the contrary stated herein, entry of this Order shall not in any way constitute:  (a) a finding of complete adequate protection of the interests of all Secured Creditors or the lack thereof; (b) a preclusion or waiver to assert any other rights, remedies, or defenses available to Secured Creditors to respond to any motion, application, proposal, or other action, all such rights, remedies, defenses, and opportunities to respond being specifically reserved by Secured Creditors; or (c) a preclusion, waiver, or modification of any rights or remedies that Secured Creditors have under applicable law

Dated: White Plains, New York
August 7, 2023

**_/s/ Sean H. Lane_**
United States Bankruptcy Judge